United States Bankruptcy Court
Southern District of Texas

**ENTERED**

November 21, 2022

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 19-70233** |
| **LONGHORN PAVING & OILFIELD SER-** | § | |
| **VICES, INC.** | § | **CHAPTER 7** |
| **and** | § | |
| **MONTY AWBREY,** | § | |
| | § | |
| Debtors. | § | |
| | § | |
| **CATHERINE S. CURTIS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 20-7006** |
| | § | |
| **MONTY JEFF AWBREY** | § | |
| **and** | § | |
| **LONGHORN SERVICES, INC.** | § | |
| **and** | § | |
| **AWBREY ENTERPRISES, INC.,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

Chapter 7 trustee Catherine S. Curtis brings nine counts against Monty Jeff Awbrey, Long-

horn Services, Inc. and Awbrey Enterprises, Inc. seeking to avoid and recover various alleged

transfers of estate property pursuant to §§ 541, 542, 547, 549 and 550 of the Bankruptcy Code, as

well as for conversion, breach of fiduciary duty, knowing participation in a breach of fiduciary

duty, and usurpation of corporate opportunities under Texas law.  Catherine S. Curtis additionally

seeks an award of exemplary damages pursuant to § 41.003 of the Texas Civil Practices & Remedy

Code and recovery of attorneys' fees pursuant to §§ 327, 330, 362, 544 of the Bankruptcy Code

and uncited "applicable state statutes" from Monty Jeff Awbrey, Longhorn Services, Inc. and

Awbrey Enterprises, Inc.  The Court conducted a one day trial on October 11, 2022.  For all the reasons discussed infra, the Court finds that all nine counts, as well as Trustee's request for attorney's fees and exemplary damages, are denied.

## I.    BACKGROUND

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure ("*Rule*") 52, which is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure ("*Bankruptcy Rule*") 7052.  To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such.  To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such.  This Court made certain oral findings and conclusions on the record.  This Memorandum Opinion supplements those findings and conclusions.  If there is an inconsistency, this Memorandum Opinion controls.[1]

1.  Longhorn Paving and Oilfield Services, Inc. ("*Debtor*") was in the business of commercial paving and oilfield services.[2]

2.  Debtor was owned by Melissa Awbrey.[3]

3.  Monty Jeff Awbrey Jr. ("*Awbrey*") previously served as president of Debtor but resigned his position as of February 28, 2019.[4]  Awbrey continued to be an employee/consultant and received a regular salary from Debtor until January 17, 2020,[5] shortly before the case was converted on March 25, 2020.[6]

4.  Melissa Awbrey is the sister of Monty Jeff Awbrey Jr.

5.  On June 10, 2019, (the "*Petition Date*") Debtor filed for bankruptcy protection under chapter 11 of the Bankruptcy Code[7] initiating the bankruptcy case styled *In re Longhorn Paving and Oilfield Services, LLC,* pending under Case No 19-70233, in the United States Bankruptcy Court for the Southern District of Texas, McAllen Division (the "*Bankruptcy*

---

[1] Citations to the docket in this adversary proceeding styled *Curtis v. Awbrey* 20-7006, shall take the form "ECF No. ——," while citations to the bankruptcy case, 19-70233, shall take the form "Bankr. ECF No. ——."
[2] ECF No. 62 at 3.
[3] *Id.*
[4] ECF No. 62 at 3, 71-14.
[5] ECF No. 62, 71-14, 75-55.
[6] Bankr. ECF No. 133.
[7] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C.

*Case*").

6.  Debtor's original schedules filed on June 10, 2019, listed $3,733,262.92 in total assets and $3,131,973.26 in total liabilities.[8]

7.  On July 31, 2019, Awbrey formed Longhorn Services, Inc. ("*LSI*") and began operating a similar business to Debtor.[9]

8.  Between November 16, 2018, and May 24, 2019, Awbrey received seventeen regular salary disbursements from Debtor totaling $31,100.00.[10]   Some of these salary disbursements included reimbursement for out of pocket travel expenses.[11]

9.  Between November 16, 2018, and December 21, 2018, Awbrey Enterprises Inc. ("*AEI*") received three payments from Debtor totaling $17,000.00.[12]

10. Between June 10, 2019, and January 17, 2020, Awbrey received twenty regular salary disbursements from Debtor totaling $31,358.30.[13]   Some of these salary disbursements included reimbursement for out of pocket travel expenses.[14]

11. Between October 1, 2019, and July 31, 2021, LSI generated $362,719 in profit.[15]

12. On March 25, 2020, the Bankruptcy Case was converted to a proceeding under chapter 7.[16]

13. On March 26, 2020, Catherine S. Curtis ("*Trustee" or "Plaintiff*") was duly appointed as chapter 7 Trustee.[17]

14. On November 17, 2020, the instant adversary proceeding styled *Curtis v. Awbrey* 20-7006 ("*Adversary Proceeding*") was filed by Trustee against Awbrey, LSI, and AEI (collectively "*Defendants*").[18]

15. On January 5, 2021, Defendants timely filed an answer to the original complaint.[19]

16. On August 19, 2021, Trustee filed her first amended complaint ("*Complaint*").[20]

---

[8] ECF No. 62, 75-36.
[9] ECF No. 75-49; October 11, 2022, Min. Entry (trial testimony).
[10] ECF No. 62, 75-36.
[11] *See* October 11, 2022, Min. Entry (showing that Awbrey testified at trial that some of the salary payments that were in excess of his regular paycheck included travel reimbursements).
[12] ECF Nos. 62 at 5; 75-55.
[13] ECF Nos. 62 at 6; 75-55.
[14] October 11, 2022, Min. Entry (showing that Awbrey testified at trial that some of the salary payments that were in excess of his regular paycheck included travel reimbursements).
[15] *See* ECF 75-1.
[16] Bankr. ECF Nos. 128, 133.
[17] *See* March 26, 2020, Bankr. Min. Entry.
[18] ECF No. 1.
[19] ECF No. 4.
[20] ECF No. 37.

17. On August 30, 2022, Defendants timely filed their answer to the Complaint ("*Answer*").[21]

18. On May 23, 2022, the parties filed a joint motion to refer the matter to mediation,[22] which was granted by the Court on the same day.[23]

19. On June 29, 2022, mediation was unsuccessful and the Court issued its order for a pre-trial conference.[24]

20. On July 5, 2022, Trustee and Defendants submitted a joint pre-trial statement ("*Joint Pre-Trial Statement*") that listed agreed and disputed issues of law and fact, as well as the witnesses that would be called at trial.

21. On October 11, 2022, the Court conducted a one day trial.  The Court now issues its instant Memorandum Opinion.

## II.   CREDIBILITY OF WITNESSES

It is the Court's duty to assess and weigh the credibility of witnesses.[25]  At the October 11, 2022 trial, the Court heard testimony from four witnesses: (1) Catherine S. Curtis; (2) Greg T. Murray; (3) Jose M. Falcon; and (4) Monty Jeff Awbrey Jr.  After observing the witnesses and listening to their testimony, the Court makes the following observations regarding the credibility of the witnesses, as set forth below.

### 1. Catherine S. Curtis

Catherine S. Curtis is the Chapter 7 Trustee in the underlying Bankruptcy Case and is the Plaintiff in this adversary proceeding.[26]  At trial, Catherine S. Curtis responded to questions clearly, completely, and directly.[27]  Thus, the Court finds that she is a very credible witness and gives substantial weight to her testimony.

---

[21] ECF No. 39.
[22] ECF No. 55.
[23] ECF No. 56.
[24] ECF No. 59.
[25] *In re Burg*, 641 B.R. 120, 128 (Bankr. S.D. Tex. 2022) (citing *Port Arthur Towing Co. v. John W. Towing, Inc. (In re Complaint of Port Arthur Towing Co.)*, 42 F.3d 312, 318 (5th Cir. 1995)).
[26] *See* March 26, 2020 Bankr. Min. Entry; ECF No. 1.
[27] *See, e.g., In re Burg*, 641 B.R. at 129 (citations omitted).

### 2. Greg T. Murray

Greg T. Murray is a forensic accountant retained as an expert witness by the Trustee in this adversary.[28]   At trial, Greg T. Murray responded to questions clearly, completely, and directly.[29]  Thus, the Court finds that he is a very credible witness and gives substantial weight to his testimony.

### 3. Jose M. Falcon

Jose M. Falcon is a former employee of Debtor.[30]  At trial, Jose M. Falcon responded to questions clearly, completely, and directly.[31]  Thus, the Court finds that he is a very credible witness and gives substantial weight to his testimony.

### 4. Monty J. Awbrey Jr.

Monty J. Awbrey Jr. is a Defendant in this adversary and former president of Debtor.  At trial, Monty J. Awbrey Jr. responded to questions clearly, completely, and directly.[32]  Thus, the Court finds that he is a very credible witness and gives substantial weight to his testimony.

### III.    JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[33]  Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[34]  This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (F), and (O) this proceeding contains core matters, as it primarily involves

---

[28] *See* ECF No. 62; October 11, 2022, Min. Entry.
[29] *See, e.g., In re Burg,* 641 B.R. at 129 (citations omitted).
[30] *See* October 11, 2022, Min. Entry (trial testimony).
[31] *See, e.g., In re Burg,* 641 B.R. at 129 (citations omitted).
[32] *See, e.g., id.*
[33] *In re*: *Order of Reference to Bankruptcy Judges,* Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[34] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

proceedings concerning the administration of this estate, recovery of estate property, and recovery preferential transfers.[35]  This proceeding is also core under the general "catch-all" language with respect to the preference and recovery of estate property claims, because such suits are the type of proceeding that can only arise in the context of a bankruptcy case.[36]

This Court may only hear a case in which venue is proper.[37]  28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."  Defendants reside and have their principal place of business in Edinburg, Texas[38] and therefore, venue of this proceeding is proper.

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[39]  On February 23, 2021, Trustee filed her notice of consent stating that she consented to the entry of final orders and judgments by this Court as it pertains to any and all non-core matters.[40]  On the same date, Defendants entered their notice of non-consent.[41]  Regarding any non-core claims involved, this Court finds that resolution of such claims is inextricably intertwined with resolution of the core claims.[42]

---

[35] *See* 11 U.S.C. § 157(b)(2)(A), (O) and (F).

[36] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).

[37] 28 U.S.C. § 1408.

[38] *Compare* ECF No. 37 at 2, ¶ 3-4 to ECF No. 39 at 1, ¶ 3-4; October 11, 2022, Min. Entry (showing that Awbrey testified at trial that he resides in Edinburg, Texas).

[39] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).

[40] ECF No. 13.

[41] ECF No. 14.

[42] *E.g., In re Spillman Development Group, Ltd.*, 710 F.3d 299, 306 (5th Cir. 2013) (holding that creditor's state contract-law claims were inextricably intertwined with the interpretation of a right created by federal bankruptcy law); *Honigman, Miller, Schwartz & Cohn v. Weitzman (In re DeLorean Motor Co.)*, 155 B.R. 521, 525 (9th Cir. BAP 1993) (holding that an otherwise non–core state law claim was inextricably tied to the determination of an administrative claim against the estate and similarly tied to questions concerning the proper administration of the estate); *Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431, 1438 (9th Cir. 1995) (citing *Honigman, Miller, Schwartz & Cohn* with approval); *see also CDX Liquidating Trust v. Venrock Assoc.*, No. 04–7236, 2005 WL 3953895, at *2 (N.D. Ill. Aug. 10, 2005) (holding that where non–core claims were inextricably intertwined with core claims, the

As such this Court can enter final orders and judgments.  However, should the Honorable United States District Court determine that the Bankruptcy Court did not have authority to enter final orders and judgments, this Court requests that the Honorable United States District Court convert this Memorandum Opinion into a Report and Recommendation.

## IV.     ANALYSIS

Trustee brings nine total counts against Awbrey, LSI, and AEI.  Trustee brings Counts One, Two, and Three against all three Defendants seeking to avoid and recover various alleged transfers of estate property pursuant to §§ 541, 542, 549 and 550 of the Bankruptcy Code and Texas conversion law;[43] Count Four under Texas law against Awbrey and LSI for breach of fiduciary duty and knowing participation in a breach of fiduciary duty respectively;[44]  Counts Five, Six, Eight, and Nine against Awbrey for usurpation of corporate opportunities under Texas law and recovery of alleged preferential and unauthorized post-petition transfers pursuant to §§ 547, 549, and 550 of the Bankruptcy Code;[45]  Count Seven against AEI for recovery of alleged preferential transfers pursuant to § 547 of the Bankruptcy Code,[46]  and finally, Trustee additionally seeks an award of exemplary damages pursuant to § 41.003 of the Texas Civil Practices & Remedy Code § 41.003 and recovery of attorneys' fees pursuant to §§ 327, 330, 362, 544 of the Bankruptcy Code

---

non–core claims should be treated as core claims); *Electric Machinery Enterprises, Inc. v. Hunt Construction Group, Inc.* (*In re Electric Machinery Enterprises, Inc.*), 416 B.R. 801, 866–67 (Bankr. M.D. Fla. 2009) (adopting inextricably intertwined approach).

[43] ECF No. 37 at 7-9.
[44] *Id.* at 9-10.
[45] *Id.* at 10-13.
[46] *Id.* at 11-12.

and uncited "applicable state statutes" from Defendants.[47]  The Court will consider each in turn.

## A. Count One — turnover of property of the estate pursuant to 11 U.S.C. §§ 541 and 542

In Count One, Trustee asserts that Defendants are in possession of property of Debtor's estate and seeks turnover pursuant to § 542.[48]  Specifically, Trustee alleges that Defendants are in possession of certain intangible assets, including certain receivables, customer information, customer lists, vendor lists, telephone numbers, Debtor's business name, Debtor's business address, general intangibles, rights to Debtor's critical information, and competitive advantages in the forms of goodwill and specialized knowledge ("*Intangible Assets*").[49]

Section 541(a)(1) provides that property of the estate constitutes "all legal and equitable interests of the debtor in property as of the commencement of the case."[50]  Section 542(a) provides that:

> (a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.[51]

Furthermore, "It is well-settled that, in turnover proceedings, the trustee must prove by clear and convincing evidence both that the property at issue is property of the bankruptcy estate and that it is in the possession of the party proceeded against."[52]  To determine if an asserted property interest belongs to the estate under § 541 such that it is subject to turnover under § 542, the Court must determine if that interest exists under Texas law.[53]

---

[47] *Id.* at 13-14.
[48] ECF No. 37 at 3, ¶ 10, 7.
[49] ECF No. 37 at 3, ¶ 10, 7.
[50] 11 U.S.C. § 541(a)(1).
[51] 11 U.S.C. § 542(a).
[52] *In re Norris*, 114 F.3d 1182 (5th Cir. 1997) (citing *Maggio v. Zeitz (In re Luma Camera Service, Inc.),* 333 U.S. 56, 64 (1948).
[53] *In re Croft*, 737 F.3d 372, 374 (5th Cir. 2013) ("To determine whether something is property of the bankruptcy

Trustee failed to present evidence that any Intangible Asset was transferred to Defendants except for Debtor's customer relationships, name, and corporate logo.[54]  Thus, the Court will consider in turn whether Debtor's customer relationships, name, and corporate logo are property of the estate under § 541 and if Defendants exercised control over Debtor's customer relationships, name, and logo under § 542.

### 1.  Whether Debtor's customer relationships are property of the estate and if Awbrey/LSI exercised control over Debtor's customer relationships

At trial, Trustee argued that Debtor's customer relationships with its clients are property of the estate under § 541.[55]  Trustee further argued that Awbrey and LSI[56] improperly exercised control over these customer relationships by convincing some of Debtor's customers to leave Debtor and come to LSI, and as such, any profit generated from sales to these "stolen" clients are also property of the estate under § 541 subject to turnover under § 542.[57]

As stated supra, § 541(a)(1) provides that property of the estate constitutes "all legal and equitable interests of the debtor."[58]  Section 542(a) requires entities that are in "possession, custody, or control" of estate property to deliver it to the trustee.[59]  Trustee must show by clear and convincing evidence that the estate has a property interest in the contested asset under Texas law for it to be subject to turnover under § 542(a).[60]

---

estate, a court must look to both state and federal law. Specifically, a debtor's property rights are determined by state law, while federal bankruptcy law applies to establish the extent to which those rights are property of the estate."). *See also Matter of Kemp*, 52 F.3d 546, 551 (5th Cir. 1995) (analyzing whether an escrow agreement existed under Texas law to determine if it was property of the estate subject to turnover under § 542).

[54] *See* ECF Nos. 75-1, 4, 65, 68; October 11, 2022, Min. Entry (trial testimony).

[55] *See* ECF No. 37; October 11, 2022, Min. Entry (trial testimony).

[56] Notwithstanding allegations in the Complaint, there was no suggestion or evidence presented at trial that AEI improperly exercised control over Debtor's customer relationships. *See* ECF No. 37; October 11, 2022, Min. Entry (trial testimony).

[57] *See* October 11, 2022, Min. Entry (trial testimony).

[58] 11 U.S.C. § 541(a)(1).

[59] 11 U.S.C. § 542(a).

[60] *See In re Croft*, 737 F.3d at 374; *In re Norris*, 114 F.3d 1182.

Texas caselaw as it pertains to the unlawful taking of customer lists and/or relationships reveals that these sorts of cases almost always concern either the conversion/trade secret misappropriation of a *physical* customer list, or a breach of a non-compete agreement.[61]  Texas law does not recognize a property interest in a customer relationship by itself without there being something that was physically taken from the business or a breach of a non-compete agreement.[62]

At trial, Trustee introduced an expert report compiled by Greg T. Murray ("*Murray*"), a Certified Public Accountant and Certified Fraud Examiner in the State of Texas.[63]  Murray's report concludes that LSI generated $362,719 in profit between October 1, 2019 and July 31, 2021 ("*LSI Profit*") and that this revenue belongs to the estate.[64]  Uncontroverted testimony was also elicited from Awbrey at trial that he convinced some of Debtor's clients to come to LSI, which is reflected in LSI's revenue between October 1, 2019 and July 31, 2021.[65]  No evidence, however, was presented that Awbrey physically took anything from Debtor.  Notwithstanding allegations in the Complaint that Defendants were in possession of "customer lists,"[66] evidence at trial exclusively

---

[61] *See United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 148 (Tex. 1997) (discussing conversion of a physical customer list under Texas law); *Kassab v. Pohl*, 612 S.W.3d 571, 575 (Tex. App. 2020), review denied (Feb. 26, 2021) (discussing the taking of a customer list as a possible trade secret); *Westlake Surgical, L.P. v. Turner*, No. 03-08-00122-CV, 2009 WL 2410276, at *3 (Tex. App. Aug. 7, 2009) ("Conversion cases that do not involve funds or tangible assets generally involve trade secrets improperly acquired by a competitor or a competitor's use of a client list in an attempt to poach the suing company's clients.") (further citations omitted); *Hawkins v. Fox Corp. Hous.*, LLC, 606 S.W.3d 41, 48 (Tex. App. 2020) (discussing the improper solicitation of a company's clients in the context of an alleged breach of a non-compete agreement). *Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 626–27 (S.D. Tex. 2011) ("Although Texas courts have recognized claims for conversion where the underlying intangible right has been merged into a document such as a customer list, and there has been conversion of that document, the courts have not extended such a claim to encompass the conversion of intangible information that has not been reduced to writing.") (internal citations and quotations omitted). *BCOWW Holdings, LLC v. Collins*, No. SA-17-CA-00379-FB, 2017 WL 3868184, at *13 (W.D. Tex. Sept. 5, 2017) ("the identities of BCOWW's customer and vendors and relationships formed with them—are not trade secrets as a matter of law").

[62] *See supra*, fn. 61 (listing cases).

[63] ECF No. 75-1.

[64] October 11, 2022 Min. Entry (testimony at trial); ECF No. 75-1 at 3, 7.

[65] *See* ECF Nos. 75-6-8.

[66] ECF No. 37 at 7.

focused on the alleged misappropriation of customer relationships,[67] a distinction that is conceptually relevant under Texas law as discussed supra.[68]

Trustee presented no evidence that Awbrey ever signed a non-compete agreement and made no argument that Debtor's customer relationships are a trade secret under Texas law (nor can  a customer relationship can be a trade secret under Texas law).[69]  Trustee does broadly make allegations of conversion,[70] but as discussed infra, intangible assets cannot be converted under Texas law.[71]  Furthermore, Debtor's original and post-conversion Schedule A/B  both list "none" as it relates to, among other things, "customer lists."[72]  Taken together, the Court finds that Trustee has not met her burden to show that Debtor has a property interest in its customer relationships under Texas law.  As such, Debtor's customer relationships are not property of the estate under § 541 and the LSI Profit is thus not subject to turnover under § 542 as it relates to Debtor's customer relationships.

## 2. Whether Debtor's name or corporate logo are property of the estate and if Awbrey/LSI exercised control over Debtor's name or corporate logo

Trustee next argued at trial that Debtor's name and corporate logo are property of the estate under § 541.[73]  Trustee further argued that Awbrey and LSI[74] improperly exercised control over Debtor's name and corporate logo, and any profit generated from Awbrey and LSI's use of

---

[67] Trustee provides as an exhibit a list of Debtor's customers (ECF No. 75-48) but fails to demonstrate that this list was physically taken by Defendants. *See* October 11, 2022, Min. Entry (trial testimony).

[68] *See e.g.*, *Alliantgroup, L.P.*, 803 F. Supp. 2d at 626–27.

[69] *See e.g.*, *BCOWW Holdings, LLC*, 2017 WL 3868184, at *13.

[70] *See* ECF No. 37 at 8-9.

[71] *Express One Intern., Inc. v. Steinbeck*, 53 S.W.3d 895, 901 (Tex. App.—Dallas 2001, no pet.). *See also Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003) (explaining that Texas conversion law "concerns only physical property").

[72] *See* ECF No. 75-36 at 14-15; 75-38 at 11.

[73] *See* ECF No. 37; October 11, 2022, Min. Entry (trial testimony).

[74] There was no suggestion or evidence presented at trial that AEI exercised control over Debtor's name or corporate logo. See October 11, 2022, Min. Entry (testimony at trial).

Debtor's name and corporate logo is thus property of the estate under § 541 subject to turnover under § 542.[75]

As stated supra, § 541(a)(1) provides that property of the estate constitutes "all legal and equitable interests of the debtor."[76]  Section 542(a) requires entities that are in "possession, custody, or control" of estate property to deliver it to the trustee.[77]  Trustee must show by clear and convincing evidence that the estate has a property interest in the contested asset under Texas law for it to be subject to turnover under § 542(a).[78]

At trial, Trustee presented uncontroverted evidence that Debtor's name is "Longhorn Paving and Oilfield Services, Inc." and LSI's name is "Longhorn Services, Inc."[79]  Awbrey testified at trial that the name "Longhorn" has existed in his family business in one form or another since it was founded by his father in the 1980s.[80]  Trustee also presented the corporate logos of both Debtor and LSI at trial.[81]  The Court agrees that Debtor and LSI's name are quite similar, and that the use of the name "Longhorn" is not a coincidence.  Awbrey himself conceded that LSI was meant to be a continuation of the family business name.[82]  The corporate logo used by Debtor and LSI are also nearly identical.[83]

However, Trustee has failed to demonstrate what property interest Debtor has in the name "Longhorn" or the corporate logo under Texas law such that revenue generated from their use might be subject to turnover.  Trustee failed to present any evidence or assert at any point that Debtor has a trademark or other protected property interest in Debtor's name or corporate logo.

---

[75] *See* October 11, 2022, Min. Entry (trial testimony).
[76] 11 U.S.C. § 541.
[77] 11 U.S.C. § 542(a).
[78] *See In re Croft*, 737 F.3d at 374; *In re Norris*, 114 F.3d 1182.
[79] See ECF Nos 75-36, 49.
[80] *See* October 11, 2022, Min. Entry (testimony at trial).
[81] *See* ECF Nos. 75-65-67.
[82] *See* October 11, 2022, Min. Entry (testimony at trial).
[83] *See* ECF Nos. 75-65-67.

Debtor's schedules also state that Debtor does not have any trademarks or intellectual property interests.[84]  Furthermore, even if Debtor did have a trademark, Trustee also failed to specifically account for damages as it relates to LSI's use of Debtor's name or corporate logo.  Murray's expert report provides an overall accounting of the LSI Profit as a whole,[85] but the Court is unable to assess damages as no evidence was presented as to how much of the LSI Profit can be fairly attributed to the use of the name or logo by itself.  As such, Debtor's name and corporate logo are not property of the estate under § 541 and the LSI Profit is thus not subject to turnover under § 542 as it relates to Debtor's name or corporate logo.

Accordingly, Count One of the Complaint for turnover of estate property pursuant to § 542 as against all Defendants is denied.

### B. Count Two — conversion of estate assets

In Count Two, Trustee asserts that Defendants converted Debtor's Intangible Assets.[86] Trustee fails to cite any law in the Complaint and the parties dispute what law governs claims for conversion.[87]  The Court concludes that Trustee's claim for conversion arises under Texas state law, as all of the alleged transfers took place in Texas and a claim for conversion does not arise under federal law.[88]

To establish conversion under Texas law, a plaintiff must prove that: (i) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (ii) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (iii) the defendant

---

[84] *See* ECF Nos. 75-36 at 14-15; 75-38 at 11.
[85] *See* ECF No. 75-1.
[86] ECF No. 37 at 8.
[87] *See* ECF Nos. 37 at 8, 62 at 10, ¶ 4.
[88] *Union De Pasteurizadores De Juarez Sociedad Anonima De Cap. Variable v. Fuentes*, No. EP-16-CV-137-KC, 2016 WL 3512272, at *3 (W.D. Tex. June 21, 2016) ("conversion—is created by state law, not federal law.").

refused the plaintiff's demand for the return of the property.[89]  Furthermore, "Texas law has never recognized a cause of action for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted."[90]

As discussed supra, Trustee only presented arguments and evidence at trial in support of her claims that Defendants converted Debtor's customer relationships, name, and corporate logo.[91] Trustee's claim for conversion of Debtor's customer relationships, name, and corporate logo fails for several reasons.  First, Trustee has failed to show that Debtor "owned, had legal possession of, or is entitled to" its customer relationships, name, and logo under Texas law because, as discussed supra, Trustee has failed to show that Debtor a property interest in these assets.[92]  Second, because Trustee has failed to show that Debtor has a property interest in its customer relationships, name, and logo, Defendants have not "exercised dominion and control over the property… inconsistent with [Debtor's] rights."[93]  Third, no evidence was presented that Trustee ever requested return of anything that was alleged to have been taken by Defendants from Debtor as required under Texas law.[94]  Last, although Trustee asserts in the Complaint that "Defendants entered the premises of the Debtor"[95] and took estate assets, no evidence was provided that Awbrey or any other Defendant actually physically took anything from Debtor.  As discussed supra, businesses can have property interests in physical customer lists but customer relationships by themselves are not property under Texas law.[96]  Even if customer relationships were property, they would be at best intangible

---

[89] *Texas Dep't of Transp. v. Crockett*, 257 S.W.3d 412, 416 (Tex. App. 2008).
[90] *Express One Intern., Inc. v. Steinbeck*, 53 S.W.3d 895, 901 (Tex. App.—Dallas 2001, no pet.). *See also Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003) (explaining that Texas conversion law "concerns only physical property").
[91] *See* October 11, 2022, Min. Entry (testimony at trial).
[92] *Texas Dep't of Transp.*, 257 S.W.3d at 416.
[93] *Id.*
[94] *Id.*
[95] ECF No. 37 at 8.
[96] *See e.g.*, *Alliantgroup, L.P.*, 803 F. Supp. 2d at 626–27 ("Although Texas courts have recognized claims for conversion where the underlying intangible right has been merged into a document such as a customer list, and there has

property that is not subject to conversion liability in Texas.[97]  Similarly, Debtor's name and corporate logo are also intangible assets not subject to Texas conversion law.[98]

Accordingly, Count Two of the Complaint for conversion of estate property against all Defendants is denied.

### C. Count Four — breach of fiduciary duty and knowing participation in a breach of fiduciary duty as against Awbrey and LSI

In Count Four,[99] Trustee asserts that under Texas law Awbrey owed and breached his fiduciary duty to Debtor while he served as president of Debtor.[100]  Trustee further asserts that LSI was used as a tool of Awbrey for purposes of breaching his fiduciary duties to Debtor, and as such should be held equally liable for breach.[101]

#### 1. Whether Awbrey breached his fiduciary duty to Debtor

Breaches of fiduciary duty arise under state law.[102]  The elements for a breach of a fiduciary duty claim in Texas are: (1) the existence of a fiduciary duty; (2) breach of a fiduciary duty; (3) causation; and (4) damages.[103]  A fiduciary relationship exists between corporate officers or directors to the corporations they serve.[104]

The parties stipulated in advance of the trial that Awbrey resigned as president of Debtor on February 28, 2019 but that he continued to be an employee/consultant until the case was

---

been conversion of that document, the courts have not extended such a claim to encompass the conversion of intangible information that has not been reduced to writing.") (internal citations and quotations omitted).

[97] *Express One Intern., Inc.*, 53 S.W.3d at 901. *See also Pillar Panama, S.A. v. DeLape*, No. CIV. A. H-07-1922, 2008 WL 1967118, at *2 (S.D. Tex. May 1, 2008), *modified,* 326 F. App'x 740 (5th Cir. 2009) ("Conversion under common law also does not protect an intangible asset, including trademarks, business goodwill, or customer relationships.").

[98] *Id.*

[99] Count Three discussed infra.

[100] ECF No. 37 at 3, ¶ 12; 9-10.

[101] ECF No. 37 at 9-10.

[102] *In re S. Luxury Motorcars LLC*, No. 21-33113, 2022 WL 2719732, at *1 (Bankr. S.D. Tex. May 31, 2022).

[103] *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017).

[104] *In re Advanced Modular Power Sys., Inc.*, 413 B.R. 643, 666 (Bankr. S.D. Tex. 2009), aff'd sub nom. *Hsu v. West*, No. ADV 08-03177, 2009 WL 7760300 (S.D. Tex. Dec. 30, 2009) (citing *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 576 (Tex.1963)).

converted on March 25, 2020.[105]  Defendants also presented a resignation letter at trial that corroborates this stipulation ("*Resignation Letter*").[106]  Awbrey continued to receive a regular salary from Debtor until January 17, 2020.[107]  Evidence at trial also demonstrated that Awbrey did not begin to compete with the Debtor until July 31, 2019 when LSI was created, as LSI saw no revenue until October of 2019.[108]  Notwithstanding his resignation as Debtor's president, Awbrey signed, purportedly as Debtor's president, the consent to place Debtor into bankruptcy on May 31, 2019.[109] This subsequent action cast doubt as to whether Awbrey actually resigned as president, and as such, whether he maintained a continuing fiduciary duty as president to Debtor after his resignation.  It did not.

> Section 21.4091 of the Texas Business Organizations Code states:
>
> (a) Except as otherwise provided by the certificate of formation or bylaws, a director of a corporation may resign at any time by providing written notice to the corporation.
> (b) The director's resignation takes effect on the date the notice is received by the corporation, unless the notice prescribes a later effective date or states that the resignation takes effect on the occurrence of a future event, such as the director's failure to receive a specified vote for reelection as a director.
> (c) If the director's resignation is to take effect on a later date or on the occurrence of a future event, the resignation takes effect on the later date or when the event occurs.
> (d) The director's resignation is irrevocable when it takes effect. The director's resignation is revocable before it takes effect unless the notice of resignation expressly states it is irrevocable.[110]

Here, Awbrey provided his notice of resignation on February 28, 2019, and that resignation became effective and irrevocable on that date.  As such, his signing of the consent to place the Debtor

---

[105] ECF No. 62 at 3.
[106] The parties stipulated pre-trial that Debtor continued to receive a salary until January 17, 2020 (*See* ECF No. 62), but bank statements in the record seem to suggest the last check Awbrey received was on November 22, 2019 (*See* ECF No. 71-14).
[107] ECF No. 75-55 at 42.
[108] October 11, 2022 Min. Entry; ECF Nos. 75-6; 75-8; 75-49.
[109] ECF No. 75-36 at 82.
[110] Tex. Bus. Orgs. Code Ann. § 21.4091.

in bankruptcy on May 31, 2019 was merely ineffective, and not a revival of his role as Debtor's president.  Therefore, Awbrey did not owe Debtor a fiduciary duty as president after his resignation on February 28, 2019.[111]  Because Awbrey's competition with Debtor did not begin until July 31, 2019, when LSI was formed, there was no breach of Awbrey's fiduciary duty to Debtor.

### 2.  Whether LSI was a knowing participant to a breach of fiduciary duty

Trustee also asserts that LSI was a knowing participant in Awbrey's breach of his fiduciary duty to Debtor.[112]  Under Texas law, the elements of a knowing-participation claim are: "(1) the existence of a fiduciary duty owed by a third party to the plaintiff; (2) the defendant knew of the fiduciary relationship; and (3) the defendant was aware of his participation in the third party's breach of its duty."[113]  A knowing participation claim requires an underlying breach of fiduciary duty.[114]  Because Awbrey did not breach his fiduciary duty to Debtor, LSI also cannot be held liable as a knowing participant.

Accordingly, Count Four of the Complaint for breach of fiduciary duty and knowing participation in a breach of fiduciary duty against Awbrey and LSI respectively is denied.

### D.  Count Five — usurpation of business opportunities as against Awbrey

Trustee asserts in Count Five of the Complaint that Awbrey owed Debtor a fiduciary duty as its president and that Awbrey breached that duty by usurping corporate opportunities belonging

---

[111] The Court does find it concerning that Awbrey continued to receive a salary from Debtor as an employee after forming LSI, as this tends to suggest that there may have been a continuing conflict of interest after LSI was formed. However, testimony elicited from Awbrey at trial demonstrated that his role was limited to providing information to Debtor's representative to help facilitate the bankruptcy, and not as an active salesman. *See* October 11, 2022, Min. Entry (trial testimony). Furthermore, Trustee only asserts in the Complaint that Awbrey breached his duty as president of Debtor, not as an employee. *See* ECF No. 37 at 10, ¶ 56. As such, the Court need not consider any alternative theory of fiduciary liability in this case.
[112] ECF No. 37 at 10, ¶57.
[113] *Mesilla Off. Sols., LLC v. HGS Healthcare, LLC*, No. 4:20-CV-386-SDJ, 2022 WL 510825, at *3 (E.D. Tex. Feb. 21, 2022) (citing *Straehla v. AL Glob. Servs., LLC*, 619 S.W.3d 795, 804 (Tex. App.—San Antonio 2020, pet. denied)).
[114] *Id.*

to Debtor.[115]  Trustee contends that Awbrey usurped Debtor's corporate opportunities by transfer-ring Debtor's goodwill (including name recognition, consumer brand loyalty, or special relation-ships with suppliers or clients) to LSI and AEI for his own personal benefit.[116]

As stated, a fiduciary relationship exists in Texas between corporate officers or directors to the corporations they serve.[117]  This duty requires that corporate officers and directors act in the corporation's and shareholders' best interests.[118]  Part of this obligation is to refrain from usurping corporate opportunities for personal gain.[119]

As discussed supra, Awbrey did not owe Debtor a fiduciary duty as its president after Feb-ruary 28, 2019, and Awbrey did not begin to compete with Debtor until July 31, 2019.[120]  As such, because there was no breach of fiduciary duty there was no usurpation of corporate opportunities either.

Accordingly, Count Five of the Complaint for usurpation of business opportunities against Awbrey is denied.

**E. Counts Six and Seven — avoidance of preferential transfers pursuant to 11 U.S.C. § 547(b) as against Awbrey and AEI**

Trustee asserts in Counts Six and Seven of the Complaint that both Awbrey and AEI re-ceived preferential transfers of estate assets that are recoverable under § 547(b).[121]

Section § 547(b) provides:

> (b) Except as provided in subsections (c), (i), and (j) of this section, the trustee may, based on reasonable due diligence in the circumstances of the

---

[115] ECF No. 37 at 10.

[116] *Id.* at 10, §§ 60-63.

[117] *In re Advanced Modular Power Sys., Inc*., 413 B.R. 643, 666 (Bankr. S.D. Tex. 2009), aff'd sub nom. *Hsu v. West*, No. ADV 08-03177, 2009 WL 7760300 (S.D. Tex. Dec. 30, 2009) (citing *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 576 (Tex.1963)).

[118] *Id.* (citing *Hughes v. Houston Nw. Med. Ctr., Inc.*, 680 S.W.2d 838, 843 (Tex. App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.)).

[119] *Id.* (citing *Lifshutz v. Lifshutz,* 199 S.W.3d 9, 18 (Tex. App.-San Antonio 2006, pet. denied)).

[120] October 11, 2022 Min. Entry (trial testimony); ECF Nos. 75-6; 75-8; 75-49.

[121] ECF No. 37 at 11-12.

case and taking into account a party's known or reasonably knowable af-
firmative defenses under subsection (c), avoid any transfer of an interest of
the debtor in property--

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor be-
> fore such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made--
>> (A) on or within 90 days before the date of the filing of the
>> petition; or
>> (B) between ninety days and one year before the date of the
>> filing of the petition, if such creditor at the time of such trans-
>> fer was an insider; and
> (5) that enables such creditor to receive more than such creditor
> would receive if--
>> (A) the case were a case under chapter 7 of this title;
>> (B) the transfer had not been made; and
>> (C) such creditor received payment of such debt to the extent pro-
>> vided by the provisions of this title.[122]

The Court will consider counts Six and Seven in turn.

### 1. Count Six - whether Awbrey received preferential wage transfers

Trustee asserts in Count Six that Awbrey is a creditor and insider of Debtor and that he
received payments of estate property totaling $31,100.00 for back wages ("*Pre-Petition Wage
Transfers*") on or within one year prior to the Petition Date from Debtor, on account of an ante-
cedent debt, while Debtor was insolvent, that enabled Awbrey to receive more than he otherwise
would in this case.[123]

The Court finds that that § 547(b)(1), (2) and (4) are satisfied with respect to the Pre-Peti-
tion Wage Transfers.  First, § 547(b)(1) is satisfied because Awbrey was a creditor as defined in §
101(10) as he was a salaried employee who held claims[124] against Debtor for work performed.[125]

---

[122] 11 U.S.C. § 547(b).
[123] ECF No. 37 at 4, § 22; 11, ¶¶ 65-70.
[124] *See* 11 U.S.C. § 101(5) (defining "claim" to mean a "right to payment").
[125] 11 U.S.C. § 101(10).

Plaintiff and Defendants also stipulated that Awbrey received these payments,[126] which certainly constitute a "benefit" under § 547(b)(1).[127]  Second, the Court concludes that the Pre-Petition Wage Transfers were also paid on account of an antecedent debt as required under § 547(b)(2), as each payment was a regular salary disbursement for work performed before the transfer was made.[128]  Third, Awbrey is also an insider as defined in § 101(31)(B)(vi) which provides, "the term 'insider' includes… if the debtor is a corporation… [the] relative of a general partner, director, officer, or person in control of the debtor…"  Debtor is a corporation, and Melissa Awbrey serves as vice president.[129]  Melissa Awbrey is Monty Awbrey's sister.[130]  Thus, § 547(b)(4) is satisfied.

The first problem with Trustee's preferential transfer claim concerns Debtor's solvency as § 547(b)(3) requires that the Debtor be insolvent when the alleged preferential transfer was made. In this case, Debtor's solvency is a contested issue of fact.[131]  Defendants contend that Debtor was solvent when all of the alleged preferential transfers were made.[132]  Section 547(f) provides that "the debtor is presumed to have been insolvent on and during the ninety days immediately preceding the date of the filing of the petition."[133]  Ninety days is also the standard lookback period for preferences under § 547(b)(4), but preferences can be recovered from insiders for up to one year.[134] As such, even though § 547(b)(4)(B) allows recovery of preferential transfers from insiders up to one year prior to the petition date, because the presumption of insolvency under § 547(f) only

---

[126] ECF No. 62.
[127] 11 U.S.C. § 547(b)(1).
[128] *See In re Ramba, Inc.*, 416 F.3d 394, 399 (5th Cir. 2005) ("[a] debt is 'antecedent' for purposes of § 547(b) if it was incurred before the alleged preferential transfer.").
[129] *See* Bankr. ECF No. 1.
[130] *See* October 11, 2022, Min. Entry (testimony at trial).
[131] See ECF No. 62 at 8.
[132] ECF No. 62-2 at 2.
[133] 11 U.S.C. § 547(f).
[134] 11 U.S.C. § 547(b)(4)(B).

applies for ninety days prior to the petition date Trustee has the burden to show insolvency to recover transfers beyond ninety days.  Section 101(32) defines insolvency:

> **(32)** The term "insolvent" means--
>> **(A)** with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of--
>>> **(i)** property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
>>> **(ii)** property that may be exempted from property of the estate under section 522 of this title;[135]

At trial, Trustee presented no evidence that Debtor was insolvent as defined in § 101(32) more than ninety days prior to filing the petition.  As such, Trustee has failed to satisfy § 547(b)(3) with respect to any Pre-Petition Wage Transfers made prior to March 12, 2019 (petition filed June 10, 2019).[136]  Alleged Pre-Petition Wage Transfers prior to March 12, 2019, totaling $14,100 are not avoidable under § 547(b).[137]

Defendants also dispute that Debtor was insolvent during the ninety days prior to the Petition Date.[138]  As discussed, there is a presumption that Debtor was insolvent during the ninety days prior to filing the petition under § 547(f).[139]  "The party seeking to rebut the presumption [of insolvency under § 547(f)] must introduce some evidence to show that the debtor was solvent at the time of the transfer; mere speculative evidence of solvency is not enough."[140]  Courts have held that both a debtor's schedules and a debtor's financial statements can used as evidence to rebut the presumption of insolvency under § 547(f).[141]  However, the Fifth Circuit held in *In re Ramba, Inc.*

---

[135] 11 U.S.C. § 101(32).
[136] Bankr. ECF No. 1.
[137] *See* ECF No. 37 at 5.
[138] ECF No. 62-2 at 2.
[139] 11 U.S.C. § 547(f).
[140] *Gasmark Ltd. Liquidating Tr. v. Louis Dreyfus Nat. Gas Corp.*, 158 F.3d 312, 315 (5th Cir. 1998).
[141] *See e.g.*, *Akers v. Koubourlis (In re Koubourlis)*, 869 F.2d 1319, 1322 (9th Cir.1989); *Jones Truck Lines, Inc. v. Full Serv. Leasing Corp.*, 83 F.3d 253, 258 (8th Cir.1996) ("[a] financial statement showing positive net worth is sufficient to rebut the presumption of insolvency).

that a balance sheet purporting solvency seventeen months prior to the alleged preferential transfers was too speculative to rebut the presumption of insolvency under § 547(f).[142]

In her testimony, Trustee asserted that Debtor was not solvent on the Petition Date because Debtor "was not paying its debts as they became due" when it filed its petition on June 10, 2019.[143]   Trustee, however, did acknowledge that Debtor's original June 10, 2019 schedules ("*Original Schedules*") suggest that it was solvent.[144]   Debtor's Original Schedules show assets exceeding liabilities by $601,289.66.[145]   This is consistent with the parties stipulation in the Joint Pre-Trial Statement.[146]   Trustee testified that the assets on the Original Schedules were overstated, and that she was told after the case was converted at the 341 meeting of creditors that the reason some assets were later removed from the post-conversion schedules was because they did not actually belong to Debtor.[147]   The Court finds this assertion concerning as it suggests that the original schedule of assets was not accurate, and as such is less reliable as rebuttal evidence of Debtor's insolvency.   However, this statement was ultimately unverified hearsay that the Court assigns no weight.   In addition to Trustee's testimony and Debtor's Original Schedules, Trustee also submitted into evidence by stipulation at trial a balance sheet listing Debtor's total assets and liabilities as of June 10, 2019 ("*Balance Sheet*").[148]   The Balance Sheet also shows Debtor was solvent by $1,424,156.36 as of the Petition Date.[149]

---

[142] *See In re Ramba, Inc.*, 416 F.3d 394, 403 (5th Cir. 2005) ("[t]he obvious weakness of this evidence, however, is that it reflects a balance achieved seventeen months prior to Ramba's transfer.").
[143] October 11, 2022, Min. Entry (trial testimony).
[144] *See id.*
[145] *See* ECF No. 75-36.
[146] ECF No. 62.
[147] October 11, 2022, Min. Entry (trial testimony).
[148] ECF No. 75-43.
[149] *See id.*

Although Debtor's Original Schedules and Balance sheet do not reflect the same level of solvency on the Petition Date, both suggest Debtor was solvent to some degree.[150]  Furthermore, unlike in *In re Ramba, Inc.* where the balance sheet was from seventeen months prior to the alleged transfers, the Balance Sheet here reflects the state of Debtor's financial affairs *after* all of the alleged transfers took place.[151]  Considering the evidence presented, the Court finds that the statutory presumption of insolvency under § 547(f) has been rebutted in this case.  The Court finds that Debtor was solvent on the Petition Date, and as such, that Debtor was also solvent for the ninety days preceding the Petition Date.  Because the Court has concluded that the statutory presumption of insolvency under § 547(f) has been rebutted, the burden to show insolvency during the ninety days preceding the petition shifts back to the Trustee.[152]  As discussed, Trustee provided no affirmative evidence that Debtor was insolvent pre-petition.  As such, § 547(b)(3) is not satisfied and none of the Pre-Petition Wage Transfers are recoverable as a preference under § 547(b).

Notwithstanding Trustee's failure to provide evidence that Debtor was insolvent as required under § 547(b)(3), the Court will consider the final prong of preference liability under § 547(b)(5).  Section 547(b)(5) requires the Court to consider whether the alleged preferences allowed Awbrey to receive more than he otherwise would be entitled to in this case.[153]  To satisfy this prong, Trustee must present a chapter 7 distribution analysis showing that Awbrey received more from the Pre-Petition Wage Transfers than he would have through the chapter 7 distribution process were the Debtor's estate liquidated on the Petition Date.[154]  If Awbrey would have received less than 100% of his Pre-Petition Wage Transfers in a chapter 7 liquidation on the Petition Date,

---

[150] *Compare* ECF Nos. 75-36 *with* 75-43.
[151] *In re Ramba, Inc.*, 416 F.3d at 403; ECF No. 75-43.
[152] *In re Sadler Clinic*, PLLC, No. 12-34546, 2016 WL 921983, at *3 (Bankr. S.D. Tex. Mar. 7, 2016).
[153] 11 U.S.C. § 547(b)(5).
[154] *In re Emas Chiyoda Subsea Ltd.*, No. 17-31146, 2020 WL 1696105, at *6 (Bankr. S.D. Tex. Apr. 6, 2020). *See also* § 66:12. Preferential effect (Code § 547(b)(5)), 4 NORTON BANKR. L. & PRAC. 3d § 66:12 ("[t]he appropriate date for this analysis is the date of the petition filing").

then § 547(b)(5) is satisfied.[155]  In performing this analysis, bankruptcy courts generally take judicial notice of the documents in the case, and it is also appropriate to take judicial notice of the Debtor's bankruptcy case as a whole.[156]

Trustee did not present a chapter 7 distribution analysis showing what Awbrey would have received on his Pre-Petition Wage Transfers through the chapter 7 distribution process were the estate liquidated on the Petition Date.  Notwithstanding, the Court will take notice of documents in evidence and Debtor's bankruptcy case as a whole.  As discussed supra, the only evidence presented to the Court suggests that Debtor was solvent as of the Petition Date.[157]  Although Debtor's Original Schedules and Balance Sheet do not necessarily represent the real world liquidation value of the estate as of the Petition Date, absent evidence to the contrary the Court is sufficiently convinced that Awbrey would have received a 100% distribution on his Pre-Petition Wage Transfers if the estate were liquidated on the Petition Date.  Debtor's Original Schedules show a sizable surplus of $601,289.66 and the Balance Sheet shows an even greater surplus of $1,424,156.36.[158]  As such, Trustee has also failed to satisfy § 547(b)(5).

Accordingly, Count Six of the Complaint for recovery of Pre-Petition Wage Transfers pursuant to § 547(b) against Awbrey is denied.

### 2.  Count Seven - whether AEI received preferential transfers

Trustee asserts in Count Seven of the Complaint that AEI is a creditor and insider of Debtor and that it received payments totaling $17,000.00 ("*Disputed AEI Transfers*") on or within one

---

[155] *Id.*
[156] *Id.*
[157] ECF Nos. 75-36; 75-43.
[158] ECF Nos. 75-36, 75-43.

year prior to the Petition Date from Debtor, on account of an antecedent debt, while Debtor was insolvent, that enabled AEI to receive more than it otherwise would in this case.[159]

Similar to Count Six, the Court finds that that Trustee has failed to satisfy § 547(b)(3) and (5) with respect to the Disputed AEI Transfers.  AEI received three payments from Debtor between November 16, 2018 and December 21, 2018.[160]  Each of these payments were outside of the normal ninety day preference period in § 547(b)(4).[161]  As discussed at length supra, Trustee failed to provide any evidence that Debtor was insolvent outside this ninety day preference period as required under § 547(b)(3) to recover from insiders of Debtor.  Also discussed supra, the Court is convinced that AEI would have received a 100% distribution on the Disputed AEI Transfers were the estate liquidated on the Petition Date.  Thus, Trustee also fails to satisfy § 547(b)(5).  As such, the Court need not consider if § 547(b)(1), (2), and (4) are satisfied for Count Seven.

Accordingly, Count Seven of the Complaint for recovery of the Disputed AEI Transfers pursuant to § 547(b) against AEI is denied.

**F. Counts Three, Eight, and Nine – avoidance and recovery of post-petition transfers pursuant to §§ 549 and 550**

Trustee asserts in Counts Three, Eight, and Nine that Defendants are in possession of property of the estate that is subject to avoidance and recovery under §§ 549 and 550.

Section 549 provides, in relevant part, that "[e]xcept as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate…that occurs after the commencement of the case; and…that is not authorized under this title or by the court."[162]  Section 550 provides, in relevant part:

(a) Except as otherwise provided in this section, to the extent that a transfer is

---

[159] ECF No. 37 at 5, § 26; 11-12, ¶¶ 72-77.
[160] *See* ECF No. 62.
[161] 11 U.S.C. § 549(b)(4).
[162] 11 U.S.C. § 549(a).

avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--

> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from--

> (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
>
> (2) any immediate or mediate good faith transferee of such transferee.[163]

The Court will consider Counts Three, Eight, and Nine in turn.

### 1. Count Three — avoidance and recovery of Debtor's Intangible Assets pursuant to §§ 549 and 550

Trustee asserts in Count Three of the Complaint that Debtor's Intangible Assets were transferred to Defendants and that they should be avoided and returned to the estate pursuant to §§ 549 and 550.[164]

To avoid and recover estate property pursuant to §§ 549 and 550, Trustee must show that the complained of assets are property of the estate.[165]  As discussed at length supra, Trustee has failed to carry her burden to show that Defendants are in control or possession of any Intangible Assets that are property of the estate.

Accordingly, Count Three of the Complaint for avoidance and recovery of the Intangible Assets pursuant to §§ 549 and 550 from Defendants is denied.

### 2. Counts Eight and Nine - avoidance and recovery of post-petition wages paid by Debtor to Awbrey pursuant to §§ 549 and 550

Trustee asserts in Count Eight of the Complaint that Debtor transferred property of the estate to Awbrey after the Petition Date via seventeen checks totaling $31,358.38 ("*Post-Petition*

---

[163] 11 U.S.C. § 550.
[164] ECF No. 37 at 9.
[165] 11 U.S.C. §§ 549, 550.

*Wage Transfers*") without authorization from the Code or this Court and that these payments can be avoided under § 549.[166]  Trustee asserts in Count Nine that the Post-Petition Wage Transfers can be recovered from Awbrey pursuant to § 550.  Defendants assert four affirmative defenses to avoidance and recovery of the Post-Petition Wage Transfers under § 547(c)(1), § 547(c)(2), § 546(a)(1)(A) and (a)(1)(B), § 503.[167]

As discussed, Trustee must demonstrate that the Post-Petition Wage Transfers were property of the estate, and that they were transferred to Awbrey without authorization from the Code or this Court to avoid and recover these payments under §§ 549 and 550.[168]

Trustee and Defendants stipulated in the Pre-Trial Statement that Awbrey received each of the Post-Petition Wage Transfers after the Petition Date.[169]  Unlike the Intangible Assets, the Court can easily conclude that the Post-Petition Wage Transfers were property of the estate, as they were payments made out of Debtor's operating accounts.[170]  However, notwithstanding Trustee's assertions the Court finds that all but one of the Post-Petition Wage Transfers were in fact authorized by this Court.  The Post-Petition Wage Transfers were made to Awbrey between June 10, 2019 and January 17, 2020.[171]  The Court authorized Debtor to use cash collateral to pay business expenses, including payroll, beginning June 17, 2019.[172]  The Court's cash collateral order remained in effect until January 19, 2020.[173]  As such, the only Post-Petition Wage Transfer that was unauthorized was check number 1086 dated June 10, 2019 in the amount of $1500 ("*Check 1086*").[174]

---

[166] ECF No. 37 at 11-12, ¶¶ 79-82.
[167] ECF No. 39.
[168] 11 U.S.C. §§ 549, 550.
[169] ECF No. 62 at 6.
[170] *See* ECF No. 75-55.
[171] ECF No. 62.
[172] *See* Bankr. ECF Nos. 16, 44, 85 (showing that cash collateral was authorized to make payroll expenses from June 17, 2020 through January 19, 2020).
[173] *Id.*
[174] ECF No. 62.

All Post-Petition Wage Transfers other than check number 1086 were authorized to be paid by this Court, and as such are not avoidable under § 549.  The Court will next consider Awbrey's affirmative defenses as it pertains to Check 1086.

Defendants assert four affirmative defenses: (1) that the Post-Petition Wage Transfers were a contemporaneous exchange given to Debtor for new value under § 547(c)(1); (2) that the Post-Petition Wage Transfers were made in the ordinary course of business under § 547(c)(2); (3) that Trustee's cause of action to recover the Post-Petition Wage Transfers are barred by the statute of limitations in § 546(a)(1)(A) and (a)(1)(B); (4) that the Post-Petition Wage Transfers would be an priority administrative expense under § 503 that would result in the Trustee repaying Awbrey anything that was recovered.[175]  The Court will consider each in turn, starting with affirmative defenses (1), (3), and (4).

### a. Whether Check 1086 was a contemporaneous exchange for new value under 11 U.S.C. § 547(c)(1)

Section 547(c)(1) provides that **"**[t]he trustee may not avoid under this section a transfer… to the extent that such transfer was… intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and… in fact a substantially contemporaneous exchange."[176]  The Fifth Circuit has held that "[a]n affirmative defense places the burden of proof on the party pleading it."[177]  Defendants failed to present evidence at trial that the Post-Petition Wage Transfers, including Check 1086, were intended to be a contemporaneous exchange, nor was evidence presented that these transfers were in fact contemporaneous.  As such, Defendants' affirmative defense as it relates to § 547(c)(1) is disregarded.

---

[175] *See* ECF No. 39 at 3.
[176] 11 U.S.C. § 547(c)(1).
[177] *F.T.C. v. Nat'l Bus. Consultants, Inc.*, 376 F.3d 317, 322 (5th Cir. 2004); *see also* 11 U.S.C. § 547(g).

### b. Whether 11 U.S.C. § 546(a)(1)(A)-(B) bars recovery of Check 1086

Section 546(a) provides that:

An action or proceeding under section 544, 545, 547, 548, or 553 of this title may
not be commenced after the earlier of--
**(1)** the later of--
> **(A)** 2 years after the entry of the order for relief; or
> **(B)** 1 year after the appointment or election of the first trustee under section
> 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such
> election occurs before the expiration of the period specified in subparagraph
> (A);
**(2)** the time the case is closed or dismissed.

The order for relief was entered on June 10, 2019.[178]  Trustee was appointed on March 26, 2020.[179]

This adversary was commenced on November 17, 2020.[180]  These dates clearly show that this

adversary was commenced both within two years after the entry of the order for relief and within

one year of Trustee being appointed as chapter 7 Trustee.  As such, Defendants' affirmative de-

fense as it relates to § 546 is without merit and is disregarded.

### c. Whether 11 U.S.C. § 503 makes Check 1086 not recoverable under § 547(b).

Section 503 provides in relevant part that "[a]fter notice and a hearing, there shall be al-

lowed administrative expenses, other than claims allowed under section 502(f) of this title, includ-

ing… the actual, necessary costs and expenses of preserving the estate including… wages, salaries,

and commissions for services rendered after the commencement of the case…"[181]  The Court need

not decide if Awbrey's post-petition work for Debtor was "necessary" under § 503 because De-

fendants' affirmative defense is deficient regardless.  Defendants assert that any Post-Petition

Wage Transfer that is recovered will have to be immediately returned to Awbrey because these

---

[178] Bankr. ECF No. 1.
[179] *See* Bankr. ECF at March 26, 2020.
[180] ECF No. 1.
[181] 11 U.S.C. § 503.

payments would be priority administrative expenses under § 503.[182]  However, Defendants failed to offer any evidence that this is factually true.  The estate may very well be administratively insolvent by this point and no evidence was presented as to what the current payout will be to creditors of the estate or where Awbrey's Pre-Petition Wage Transfer claim would fall in that distribution.  As such, Defendants' affirmative defense as it relates to § 503 is disregarded.

### d.  Whether Check 1086 was made in the ordinary course of business under 11 U.S.C. §547(c)(2)

Section 547(c)(2) provides that:

(2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the trans-feree, and such transfer was--
(A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
(B) made according to ordinary business terms;

The nature of Check 1086, as is the case with all of the Post-Petition Wage Transfers, was to pay Awbrey's regular salary.[183]  Evidence in the record shows that each Post-Petition Wage Transfer was consistent in amount and frequency to pay Awbrey's salary.[184]  The Court finds that Check 1086, as well as all of the other Post-Petition Wage Transfers, were made in the ordinary course of Debtor's business and according to ordinary business terms.  As such, Defendants' have successfully asserted their § 547(c)(2) defense to Check 1086 and this payment is not recoverable.

Because Trustee has been unable to show that any of the Post-Petition Wage Transfers are avoidable under § 549, none of these payments can be recovered for the estate under § 550.

Accordingly, Counts Eight and Nine of the Complaint for avoidance and recovery of the Post-Petition Wage Transfers pursuant to §§ 549 and 550 from Awbrey are denied.

---

[182] ECF No. 39.
[183] *See* October 11, 2022, Min. Entry (trial testimony); ECF No. 75-55.
[184] ECF No. 75-55.

### G. Attorney's fees

Trustee asserts at various points in the Complaint that pursuant to §§ 327, 330, 362, 544 and uncited "applicable state statutes" that the fees, interest, and costs of this adversary should be borne by Defendants because Defendants engaged in overt efforts to dispose of, and usurp, property of the estate with full knowledge of the Debtor's insolvency and in direct conflict with express provisions of the Bankruptcy Code.[185]  Trustee asserts no cause of action in this case under §§ 362 or 544 and fails to identify what "state statutes" would entitle her to fees, and as such they are disregarded.  Thus, the Court will only consider whether an award of fees is appropriate under §§ 327 and 330.

Normally, under the "bedrock principle known as the 'American Rule,' [e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."[186] One such statute is § 330.  Section 330 allows this Court to award reasonable attorney's fees to a professional employed under § 327.[187]  Section 327 provides that "the trustee, with the court's approval, may employ one or more attorneys… to represent or assist the trustee in carrying out the trustee's duties under this title."[188]  The Court has previously approved Trustee's retention of Pulman, Cappuccio & Pullen, LLP under § 327.[189]  After counsel has been properly retained under § 327, a court may award "reasonable compensation for actual, necessary services rendered" by a trustee's counsel and "reimbursement for actual, necessary expenses."[190]  Section 330(a)(3) instructs courts, "[i]n determining the amount of reasonable compensation," to "take into account all relevant factors, including:"

---

[185] ECF No. 37 at 13, ¶¶ 87-89.
[186] *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013).
[187] 11 U.S.C. §§ 327, 330.
[188] 11 U.S.C. § 327.
[189] Bankr. ECF No. 149.
[190] 11 U.S.C. § 330(a)(1)(A)-(B).

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.[191]

Furthermore, § 330(a)(4)(A) mandates that "the court *shall not* allow any compensation for… [u]nnecessary duplication of services… or … [s]ervices that were not… [r]easonably likely to benefit the debtor's estate… or… [n]ecessary to the administration of the case."[192]

The leading Fifth Circuit decision regarding § 330 is *Woerner*.[193]  In *Woerner,* the Fifth Circuit joined the majority of circuits in adopting a prospective test for determining whether professional services are compensable, as suggested by the third factor that courts must consider under § 330: "[W]hether the services were necessary ... or beneficial at the time at which the service was rendered."[194]  Additionally, the Fifth Circuit provided the following list of factors that bankruptcy courts "ordinarily consider" when weighing this factor:

[T]he probability of success at the time the services were rendered, the reasonable costs of pursuing the action, what services a reasonable lawyer or legal firm would have performed in the same circumstances, whether the attorney's services could have been rendered by the Trustee and his or her staff, and any potential benefits to the estate (rather than to the individual debtor).[195]

---

[191] 11 U.S.C. § 330(a)(3).

[192] 11 U.S.C. § 330(a)(4)(A).

[193] *In re King*, 546 B.R. 682 (Bankr. S.D. Tex. 2016) (citing 783 F.3d 266 (5th Cir.2015)).

[194] *Id.* (citing *Woerner*, 783 F.3d at 273–74 (emphasis added)).

[195] *Id.* (citing *Woerner*, 783 F.3d at at 276).

*Woerner* reversed the Fifth Circuit's prior retrospective test, under which professionals could only be compensated for services that *actually* resulted in a tangible, identifiable, and material benefit to the estate.[196] Instead, under the new, prospective test, "[w]hether the services were ultimately successful is relevant to, *but not dispositive of,* attorney compensation."[197] In sum, the Fifth Circuit held that when read in its entirety, § 330 "permits a court to compensate an attorney not only for activities that were 'necessary,' but also for *good gambles* —that is, services that were objectively reasonable at the time they were made—even when those gambles do not subsequently (or eventually) produce an 'identifiable, tangible, and material benefit.'"[198] If professional services were *either* "'necessary to the administration' of a bankruptcy case or 'reasonably likely to benefit' the bankruptcy estate 'at the time at which [they were] rendered,' then the services are compensable."[199] However, the Fifth Circuit emphasized that its *Woerner* ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, 'taking into account *all* relevant factors.'"[200]

As detailed supra, the Court disagrees with Trustee's assertion that Defendants engaged in any efforts to dispose of or usurp property of the estate in conflict with the Code or this Court's orders.[201] Furthermore, although a failure to obtain any tangible benefit for the estate is not per se a bar to recovering attorney's fees, the Court finds that in light of the complete lack of benefit to the estate, and the lack of basic evidentiary and legal due diligence from the Trustee in this adversary, that an award of fees would be inappropriate. For example, as discussed supra in Counts Eight and Nine, Trustee failed to do a simple search of the Court's docket to determine if there

---

[196] *See id.* (citing *In re Pro–Snax Distributors, Inc.,* 157 F.3d 414, 426 (5th Cir.1998)).
[197] *Id.* (citing *Woerner,* 783 F.3d at 276 (emphasis added)).
[198] *Id.* (citing *Woerner,* 783 F.3d at 273–74 (emphasis added)).
[199] *Id.* (citing *Woerner,* 783 F.3d at 276).
[200] *Id.* (citing *Woerner,* 783 F.3d at 273–74 (emphasis added)).
[201] *See* ECF No. 37 at 13.

was authorization from the Court to pay Awbrey's salary during the pendency of the case. Had Trustee done so, it would have been quickly realized that all but one of the Post-Petition Wage Transfers were authorized by the Court and were not recoverable under §§ 549 and 550.

Trustee also asserted in Count Two that Debtor's Intangible Assets were converted by Defendants.[202] However, a cursory search of Texas conversion law quickly reveals that one cannot convert intangible assets.[203] Count Six of the Complaint misstates the law and confuses facts as it relates to alleged preferences made to Defendants under § 547(b). The Complaint states that "The Preferential Wage Transfers were made to Defendant Awbrey within 90 days of the Petition Date…"[204] However, as discussed supra the Complaint clearly seeks to recover transfers made more than 90 days prior to the petition being filed.[205] Trustee also asserts in Counts Six and Seven that the presumption of insolvency for preferences in § 547(f) applies to the entire one year insider preference period.[206] As discussed supra, the plain language of § 547(f) clearly provides that the presumption of insolvency under § 547(b)(3) only applies for ninety days preceding the filing of the petition.[207] These are merely a few examples of the lack of due diligence and overall poor presentation of evidence in this case. As such, the Court finds that this adversary was not a "good gamble" and that Trustee is thus not entitled to an award of fees in this case. Furthermore, the Court notes that notwithstanding Trustee's request that litigation costs be borne by Defendants, § 330 is not a vehicle for fee shifting.[208] If any award was made under § 330, it would come from the estate.

---

[202] ECF No. 37 at 8-9.
[203] *Express One Intern., Inc.*, 53 S.W.3d at 901. *See also Carson*, 344 F.3d at 456.
[204] ECF No. 37 at 5, ¶ 24.
[205] *See id.* at 4-5.
[206] *Compare* ECF Nos. 37 at 5, ¶ 26 *with* 11, ¶68 and 12, ¶75. *See also* 11 U.S.C. § 547(f).
[207] 11 U.S.C. § 547(f).
[208] *See Lamie v. U.S. Tr.*, 540 U.S. 526 (2004) ("If the attorney is to be paid from estate funds under § 330(a)(1) in a Chapter 7 case, he must be employed by the trustee and approved by the court.").

Accordingly, Trustee's request for attorney's fees is denied.

## H. Exemplary damages

Trustee asserts that Defendants should be liable for exemplary damages because, (1) Defendants knew that the property in their possession was property of the Debtor, (2) Defendants willfully and maliciously disregarded direct statements of the Trustee and destroyed records and documents to conceal their fraudulent activities, (3) Awbrey had knowledge of the bankruptcy of the Debtor at the time he converted and transferred the assets of the Debtor's Estate, (5) Defendants intended to defraud the creditors and Estate, and (6) by such knowing and willful disregard of the federal bankruptcy rules, Defendants should be liable for exemplary damages caused by improperly transferring property of the Estate and refusing to turnover property that is rightfully property of the Estate.[209]

The Texas Civil Practices & Remedies Code provides, in relevant part, that:

(a) Except as provided by Subsection (c), exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from:
 (1) fraud;
 (2) malice; or
 (3) gross negligence.
(b) The claimant must prove by clear and convincing evidence the elements of exemplary damages as provided by this section. This burden of proof may not be shifted to the defendant or satisfied by evidence of ordinary negligence, bad faith, or a deceptive trade practice.[210]

As the trier of fact in the suit at bar, this Court is in a unique position to assess the demeanor of witnesses and determine whether the Defendant's conduct was fraudulent or committed with malice.[211]  Exemplary damages are available only if "if the claimant proves by clear and convincing

---

[209] ECF No. 37 at 14, ¶¶ 91-95.
[210] TEX. CIV. PRAC. & REM. CODE ANN. § 41.003.
[211] *In re Amberjack Ints., Inc.*, 326 B.R. 379, 393 (Bankr. S.D. Tex. 2005).

evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence."[212]

The Texas Civil Practice and Remedies Code limits the amount of exemplary damages which a court may award.[213] Section 41.008 provides:

> (a) In an action in which a claimant seeks recovery of damages, the trier of fact shall determine the amount of economic damages separately from the amount of other compensatory damages.
> (b) Exemplary damages awarded against a defendant may not exceed an amount equal to the greater of:
> > (1)(A) two times the amount of economic damages; plus
> > (B) an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; or
> > (2) $200,000.[214]

Section 41.010 instructs the Court to consider the purpose of exemplary damages before making an award.[215] Exemplary damages function to deter and punish.[216] The amount awarded must be reasonably proportional to actual damages, though no set ratio exists for measuring reasonableness.[217] Thus, courts have discretion to assess damages which reflect the particular facts of the case.[218] In determining the reasonableness of an award, courts weigh six factors. They are: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; (5) the extent to which such conduct offends a public sense of justice and propriety; and (6) the net worth of the defendant.[219]

---

[212] *Thomas v. Hughes*, 27 F.4th 995, 1008 (5th Cir. 2022).

[213] TEX. CIV. PRAC. & REM. CODE ANN. § 41.008.

[214] *Id.* at § 41.010.

[215] *Id.*

[216] *Ratner v. Sioux Natural Gas Corp.,* 719 F.2d 801, 804 (5th Cir.1983).

[217] *In re Amberjack Ints., Inc.*, 326 B.R. 379, 393 (Bankr. S.D. Tex. 2005) (citing *Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981)).

[218] *Id.*

[219] TEX. CIV. PRAC. & REM.CODE ANN. § 41.011; *Alamo Nat'l Bank,* 616 S.W.2d at 910. Exemplary damages are "presumptively reasonable" if the award is within the statutory limits. *Peco Const. Co. v. Guajardo,* 919 S.W.2d 736, 742 (Tex.App.—San Antonio 1996, *writ denied*).

Here, the Court finds that Trustee has failed to show by clear and convincing evidence that Defendants have engaged in any behavior amounting to fraud, malice, or gross negligence as is statutorily required to award exemplary damages under Texas law.[220]

Accordingly, Trustee's request for exemplary damages is denied.

## V.   CONCLUSION

A judgment consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED November 21, 2022

Eduardo Rodriguez
United States Bankruptcy Judge

---

[220] TEX. CIV. PRAC. & REM. CODE ANN. § 41.003.