United States Bankruptcy Court
Southern District of Texas

**ENTERED**
January 03, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 19-70233 |
| LONGHORN PAVING & OILFIELD SER-VICES, INC. | § § | CHAPTER 7 |
| and | § | |
| MONTY AWBREY, | § | |
| | § | |
| Debtors. | § | |
| | § | |
| CATHERINE S. CURTIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 20-7006 |
| | § | |
| MONTY JEFF AWBREY | § | |
| and | § | |
| LONGHORN SERVICES, INC. | § | |
| and | § | |
| AWBREY ENTERPRISES, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

Catherine S. Curtis, Chapter 7 Trustee, filed with this Court a limited motion to reconsider this Court's November 21, 2022, Judgement as it pertains to the Court's disposition of Counts Eight and Nine of the First Amended Complaint. For the reasons stated herein, the Trustee's motion is denied.

### I.   BACKGROUND

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure ("*Rule*") 52, which is made applicable to adversary proceedings pursuant

to Federal Rule of Bankruptcy Procedure ("*Bankruptcy Rule*") 7052.[1] To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such. This Court made certain oral findings and conclusions on the record and certain written findings and conclusions in its November 21, 2022 Memorandum Opinion.[2] This Memorandum Opinion supplements those findings and conclusions. If there is an inconsistency, this Memorandum Opinion controls.[3]

1. Longhorn Paving and Oilfield Services, Inc. ("*Debtor*") was in the business of commercial paving and oilfield services.[4]

2. On June 10, 2019, (the "*Petition Date*") Debtor filed for bankruptcy protection under chapter 11 of the Bankruptcy Code[5] initiating the bankruptcy case styled *In re Longhorn Paving and Oilfield Services, LLC*, pending under Case No 19-70233, in the United States Bankruptcy Court for the Southern District of Texas, McAllen Division (the "*Bankruptcy Case*").[6]

3. On March 25, 2020, the Bankruptcy Case was converted to a proceeding under chapter 7.[7]

4. On March 26, 2020, Catherine S. Curtis ("*Trustee*" or "*Plaintiff*") was duly appointed as chapter 7 Trustee.[8]

5. On November 17, 2020, the instant adversary proceeding styled Curtis v. Awbrey 20-7006 ("*Adversary Proceeding*") was filed by Trustee against Monty Jeff Awbrey ("*Awbrey*"), Longhorn Services, Inc. ("*LSI*"), and Awbrey Enterprises, Inc. ("*AEI*" and collectively with Awbrey and LSI "*Defendants*").[9]

6. On August 19, 2021, Trustee filed her first amended complaint ("*Complaint*").[10]

---

[1] Fed. R. Civ. P. 52; Fed. R. Bankr. P. 7052.
[2] ECF No. 81.
[3] Citations to the docket in this adversary proceeding styled Curtis v. Awbrey 20-7006, shall take the form "ECF No. ——," while citations to the bankruptcy case, 19-70233, shall take the form "Bankr. ECF No. ——."
[4] ECF No. 62 at 3.
[5] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C.
[6] Bankr. ECF No. 1.
[7] Bankr. ECF Nos. 128, 133.
[8] *See* March 26, 2020, Bankr. Min. Entry.
[9] ECF No. 1.
[10] ECF No. 37.

7. On August 30, 2022, Defendants timely filed their answer to the Complaint ("*Answer*").[11]

8. On October 11, 2022, the Court conducted a one day trial.

9. On November 21, 2022, the Court entered its Memorandum Opinion ("*November 21 Memorandum Opinion*") and Judgement ("*November 21 Judgement*") denying all nine counts in the Complaint as well as Trustee's request for attorney's fees and exemplary damages.[12]

10. On December 5, 2022, Trustee filed her "Limited Motion by Catherine S. Curtis, Chapter 7 Trustee, to Alter or Amend Judgement Under Rule 59 of the Federal Rules of Civil Procedure and Rule 9023 of the Federal Rules of Bankruptcy Procedure with Respect to Counts Eight and Nine of the Trustee's Amended Complaint"[13] ("*Motion to Reconsider*").

11. On December 21, 2022, Defendants filed their "Defendants' Answer to Catherine S. Curtis's Limited Motion to Alter or Amend Judgment Under Rule 59 of the Federal Rules of Civil Procedure and rule 9023 of the Federal Rules of Bankruptcy Procedure"[14] ("*Response*").

12. Having considered the arguments and authorities in Trustee's Motion to Reconsider and Defendant's Response, the Court now issues its instant Memorandum Opinion.

## II. JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[15] Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[16] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (F), and (O) this proceeding contains core matters, as it primarily involves proceedings concerning the administration of this estate, recovery of estate property, and recovery preferential transfers.[17] This proceeding is also core under the general "catch-all" language with

---

[11] ECF No. 39.
[12] ECF Nos. 81, 82.
[13] ECF No. 90.
[14] ECF No. 91.
[15] *In re: Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[16] 28 U.S.C. § 157(a); *see also In re: Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[17] *See* 11 U.S.C. § 157(b)(2)(A), (O) and (F).

respect to the preference and recovery of estate property claims, because such suits are the type of proceeding that can only arise in the context of a bankruptcy case.[18]

This Court may only hear a case in which venue is proper.[19] 28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."[20] Defendants reside and have their principal place of business in Edinburg, Texas[21] and therefore, venue of this proceeding is proper.

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[22] On February 23, 2021, Trustee filed her notice of consent stating that she consented to the entry of final orders and judgments by this Court as it pertains to any and all non-core matters.[23] On the same date, Defendants entered their notice of non-consent.[24] Regarding any non-core claims involved, this Court finds that resolution of such claims is inextricably intertwined with resolution of the core claims.[25]

---

[18] *See Southmark Corp. v. Coopers & Lybrand* (In re Southmark Corp.), 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood* (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987)).
[19] 28 U.S.C. § 1408.
[20] 28 U.S.C. § 1409(a).
[21] *Compare* ECF No. 37 at 2, ¶ 3-4 *with* ECF No. 39 at 1, ¶ 3-4; October 11, 2022, Min. Entry (showing that Awbrey testified at trial that he resides in Edinburg, Texas).
[22] *See* 28 U.S.C. §§ 157(b)(1), (c)(1). S*ee also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).
[23] ECF No. 13.
[24] ECF No. 14.
[25] *E.g.*, *In re Spillman Development Group, Ltd*., 710 F.3d 299, 306 (5th Cir. 2013) (holding that creditor's state contract-law claims were inextricably intertwined with the interpretation of a right created by federal bankruptcy law); *Honigman, Miller, Schwartz & Cohn v. Weitzman* (*In re DeLorean Motor Co*.), 155 B.R. 521, 525 (9th Cir. BAP 1993) (holding that an otherwise non–core state law claim was inextricably tied to the determination of an administrative claim against the estate and similarly tied to questions concerning the proper administration of the estate); *Maitland v. Mitchell* (*In re Harris Pine Mills*), 44 F.3d 1431, 1438 (9th Cir. 1995) (citing *Honigman, Miller, Schwartz & Cohn* with approval); *see also CDX Liquidating Trust v. Venrock Assoc*., No. 04–7236, 2005 WL 3953895, at *2 (N.D. Ill. Aug. 10, 2005) (holding that where non–core claims were inextricably intertwined with core claims, the non–core claims should be treated as core claims); *Electric Machinery Enterprises, Inc. v. Hunt Construction Group, Inc.* (*In re Electric Machinery Enterprises, Inc*.), 416 B.R. 801, 866–67 (Bankr. M.D. Fla. 2009) (adopting inextricably intertwined approach).

As such this Court can enter final orders and judgments. However, should the Honorable United States District Court determine that the Bankruptcy Court did not have authority to enter final orders and judgments, this Court requests that the Honorable United States District Court convert this Memorandum Opinion into a Report and Recommendation.

### III.      ANALYSIS

#### A. Standard of review for a motion to reconsider under Rule 59(e)

Trustee seeks limited reconsideration of this Court's November 21 Judgement pursuant to Rule 59(e)[26] which is made applicable to this Adversary Proceeding pursuant to Bankruptcy Rule 9023.[27] Rule 59(e) provides that, "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."[28] Unlike Rule 60(b), Rule 59(e) does not enumerate specific grounds that parties may seek relief under.[29] The Fifth Circuit has stated that a Rule 59(e) motion is not a proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.[30] Rather, Rule 59(e) "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."[31] "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly."[32]

#### B. Trustee's Motion to Reconsider

Trustee seeks limited reconsideration of this Court's November 21 Judgement as it pertains to this Court's denial of Counts Eight and Nine of the Complaint.[33] Counts Eight and Nine of the

---

[26] ECF No. 90 at 4-5.
[27] *See* Fed. R. Bankr. P. 9023 (showing that Rule 59 is made applicable to cases under Title 11 with the exception that parties have only fourteen days post-judgment to seek relief).
[28] Fed. R. Civ. P. 59(e).
[29] *Compare* Fed. R. Civ. P. 59(e) *with* Fed. R. Civ. P. 60(b).
[30] *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004).
[31] *Id.*
[32] *Id.*
[33] ECF No. 90 at 1, 9.

Complaint sought to avoid and recover certain post-petition transfers that were made to Awbrey between June 10, 2019, and January 17, 2020, in the amount of $31,358.38 ("*Post-Petition Wage Transfers*") pursuant to §§ 549 & 550.[34]

As discussed in this Court's November 21 Memorandum Opinion, Trustee had the burden to demonstrate that the Post-Petition Wage Transfers were property of the estate, and that they were transferred to Awbrey without authorization from the Code or this Court to avoid and recover these payments pursuant to §§ 549 and 550.[35] The Court denied Counts Eight and Nine on the basis that all but one of the Post-Petition Wage Transfers were authorized by this Court's cash collateral orders ("*Cash Collateral Orders*") in the underlying Bankruptcy Case.[36] The Court further concluded that all of the Post-Petition Wage Transfers, including Check 1086, the one unauthorized payment, were regular salary payments made from Debtor to Awbrey in the ordinary course of business and according to ordinary business terms as defined in § 547(c)(2).[37]

Trustee asserts that this Court committed a manifest error of fact in concluding that the Post-Petition Wage Transfers were authorized by the Court's Cash Collateral Orders and that they were made in the ordinary course of business under § 547(c)(2).[38] Trustee supports her argument by citing to two pieces of evidence in the record for the Court's reconsideration: (1) the general absence of memo line notations on each Post-Petition Wage Transfer check indicating what the checks were for and Awbrey's inability to recall at trial what some of the checks were for absent a memo line notation; and (2) inconsistent trial testimony from Awbrey indicating that the Post-Petition Wage Transfers were in fact paid on account of pre-petition debt.[39] Trustee also argues

---

[34] ECF No. 37 at 12-13.
[35] ECF No. 81 at 27.
[36] *Id.*(citing Bankr. ECF Nos. 16, 44, 85).
[37] *Id.* at 30.
[38] ECF No. 90 at 6-8.
[39] *Id.* at 5-9.

that this Court's conclusion that the Post-Petition Wage Transfers were authorized by this Court's Cash Collateral Orders and were made in the ordinary course of business is precluded because the Court also found that Awbrey's resignation from Debtor "became effective and irrevocable on [February 28, 2019]."[40] The Court quickly dispenses with this last argument, as the Court's conclusion that Awbrey's resignation was "effective and irrevocable on [February 28, 2019]" was clearly limited to his role as the president of Debtor.[41] Furthermore, as delineated in this Court's November 21 Memorandum Opinion, the parties stipulated that Awbrey continued to work as an employee/consultant until March 25, 2020.[42] The Court will consider Trustee's remaining arguments in turn.

### 1. Memo line notations and Awbrey's memory at trial

First, Trustee asserts that "[t]he evidence admitted at trial showed at that at least fourteen (14) of the post-petition checks… did not contain a memorandum referencing what the payment was for… [t]he evidence also demonstrated that the Debtor was capable of denoting when a particular check was payment for contract labor or other services"[43] and that "Awbrey himself could not remember under oath what several of the Post-Petition Transfers were for without a memorandum on the check."[44]

The Court is entirely unpersuaded by Trustee's first argument. The mere absence of memo line notations identifying what each Post-Petition Wage Transfer check was for does not lend itself as affirmative evidence that these checks were issued to pay pre-petition wages. Similarly, Awbrey's occasional inability to recall what certain Post-Petition Wage Transfer checks were for at

---

[40] *Id.* at 8.
[41] ECF No. 81 at 16.
[42] *Id.* at 15-16 (citing ECF No. 62 at 3).
[43] ECF No. 90 at 6.
[44] *Id.* at 8.

trial also does not lend itself as affirmative evidence that the checks were issued to pay pre-petition wages. The absence of evidence is not evidence and Trustee is the one who carries the burden to show that the Post-Petition Wage Transfers were issued to pay pre-petition wages. Furthermore, the Court notes that while many of the Post-Petition Wage Transfer checks do not have a memo line notation, check #9478 does, and it reads "wk of 10/11/19."[45] Awbrey suggested at trial that this check was issued for work performed the week of October 11, 2019.[46] As such, the Court dispenses with Trustee's first argument.

### 2. Inconsistent trial testimony from Awbrey

Second, Trustee requests that this Court reconsider certain impeachment testimony elicited from Awbrey on cross-examination at trial in which he reads from his August 2020 deposition testimony ("*Deposition Testimony*").[47] In Awbrey's Deposition Testimony, he states that he was not working for the Debtor post-petition and that the Post-Petition Wage Transfers were repayment of back wages.[48] The entire exchange at trial is as follows:

> Q [Ms. Macfarlane] Okay. So is it your testimony today that, to the best of your recollection, these checks were for services rendered at the time, like they paid you every week?
> A [Awbrey] That is correct.
> Q Okay. And we spoke earlier that you testified in this case earlier under oath. Do you remember that?
> A I'm still under oath, ma'am.
> Q I understand.
> MS. MACFARLANE: May I approach the witness?
> THE COURT: You may.
> BY MS. MACFARLANE: Q Doing the same thing as before, have you read out loud 8 here, at Line 15, down to Line 20, please.
> …
> A [Awbrey reading from his Deposition] "Q. **Okay. So, if they were showing payments to you post-petition, is there anything this could be for except for back wages**" "Answer: **No, sir. I was not working for Longhorn Services -- I was**

---

[45] ECF No. 75-55 at 39.
[46] ECF No. 87 at 150, ¶¶ 4-12.
[47] *Id.* at 152, ¶¶ 11-16.
[48] *Id.* at 152, ¶¶ 7-16.

> **working for -- I was not working for Longhorn Services or Longhorn Paving at that time."**
> Q Okay. That's fine. Thank you. So is it your test -- is your testimony now true that it was for current true, or was your testimony at that time true, that it was for back wages?
> A The -- what I got -- what I got paid for was for services that I was helping them for on a weekly basis, me taking time out of my schedule to assist them.
> Q Okay. So, when you testified earlier that any checks you got from the Debtor post-petition was for back wages, that wasn't true?
> A I said I did not know what some of those checks were for. I couldn't recall.[49]

The Court first notes that neither the Deposition Testimony nor even the excerpt that Awbrey read at trial was admitted into evidence or provided to the Court for review. Trustee also did not provide a copy of the Deposition Testimony to opposing counsel at trial as required under BLR 9013-2(c), (d).[50] However, since no objection was raised at trial to use of the Deposition Testimony the Court will consider this evidence as it pertains to the Post-Petition Wage Transfers.

The Court previously held Awbrey to be a credible witness and assigned substantial weight to his testimony.[51] Furthermore, as discussed in the Court's November 21 Memorandum Opinion, all of the Post-Petition Wage Transfer checks paid by Debtor to Awbrey were paid post-petition and were consistent in frequency and amount, indicative of a weekly salary paycheck.[52] Additionally, as discussed supra, check #9478 also provided "wk of 10/11/19" on the memo line, and Awbrey testified at trial that he believed it to be for work performed that week.[53] The Deposition Testimony that Awbrey read into the record does contradict his trial testimony that the Post-Petition Wage Transfers were paid for post-petition work for Debtor.[54] However, when pressed on cross examination after reading from his Deposition Testimony, Awbrey maintained that he was

---

[49] *Id.* at 151, ¶ 21 – 153, ¶ 3.
[50] BLR 9013-2(c), (d).
[51] ECF No. 81 at 5.
[52] Id. at
[53] ECF Nos. 75-55 at 39; 87 at 150, ¶ 8.
[54] *See* ECF No. 87 at 151, ¶ 21 – 153, ¶ 3.

working for Debtor post-petition and was receiving a weekly paycheck for that work.[55] Furthermore, as discussed, Trustee stipulated in advance of trial that Awbrey continued to work as an employee/consultant of Debtor post-petition until the case was converted on March 25, 2020.[56]

As discussed in this Court's November 21 Memorandum Opinion, Trustee carries the burden to demonstrate that the Post-Petition Wage Transfers were unauthorized.[57] Furthermore, as stated previously, "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly."[58] Notwithstanding the inconsistent Deposition Testimony highlighted by Trustee, and having taken all of the evidence into consideration, this Court maintains its credibility determination of Awbrey as a credible witness and continues to assign his trial testimony substantial weight.

As such, the Court concludes that: (1) Trustee has failed to carry her burden to show that the Post-Petition Wage Transfers that were issued by Debtor to Awbrey were to pay pre-petition wages; (2) Trustee has failed to show that the Post-Petition Wage Transfers were unauthorized by this Court's Cash Collateral Orders; and (3) Trustee has thus failed to show that this Court's prior finding that the Post-Petition Wage Transfers were authorized by this Court's Cash Collateral Orders and were made in the ordinary course of business under § 547(c)(2) was a manifest error of fact.

Accordingly, Trustee's Motion to Reconsider is denied. The Court's November 21 Judgement will remain in effect unchanged.

### IV.   CONCLUSION

---

[55] *Id.* at 152, ¶¶ 21-23.
[56] ECF No. 62 at 3, ¶ 6.
[57] ECF No. 81 at 27.
[58] *Templet*, 367 F.3d at 478–79.

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED January 3, 2023

_____
Eduardo V. Rodriguez
Chief Judge
United States Bankruptcy Court